UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
NAFTASERVICE TRADING (CYPRUS) LTD.,          :
                                                                              :      08 Civ. 0317 (SAS)
                           Plaintiff,                              :
                                                                              :
            -against-                                                :
                                                                              :      MEMORANDUM OPINION
ALARIC CO. LTD., and ALARIC CONSULTING  :
& INVESTMENT CORPORATION LIMITED,      :
                                                                              :
                           Defendants.                           :
------------------------------------------------------------ x

HAIGHT, Senior District Judge:

    In this admiralty action, counsel for the plaintiff appeared *ex parte* to apply for an order for issuance of process of maritime attachment and garnishment, pursuant to Supplemental Rule B of the Federal Rules of Civil Procedure. In the absence from the Courthouse of Judge Scheindlin, to whom the case is assigned, the application was presented to the undersigned, sitting in Part I.

    Plaintiff sought an attachment in the amount of US $1,874,233.62. Process will issue in the amount of $937,116.81, one-half of the requested amount. This memorandum opinion explains the Court's reasons.

    The verified complaint of plaintiff Naftaservice Trading (Cyprus) Ltd. ("Naftaservice") against defendants Alaric Co. Ltd. ("Alaric") and Alaric Consulting & Investment Corporation Limited ("Alaric Consulting") satisfies the requirements of Rule B. In its first cause of action against Alaric for breach of a maritime contract, Naftaservice alleges that at the pertinent times it was the disponent owner of the M/V TROODOS, which Naftaservice chartered to Alaric to carry a cargo of fuel oil from the port of Misurata, Libya to Malta. The vessel was detained at the loading port, the cargo first loaded and then discharged, the vessel "is still detained under arrest in Libya," Compl. ¶15, and Naftaservice asserts claims under the charter party for freight, demurrage, and port charges.

The charter party provides for arbitration in London of disputes between Naftaservice and Alaric. Naftaservice has commenced arbitration. In the first cause of action in its complaint in this Court, Naftaservice calculates a principal claim of $689,850.00, to which it adds estimated amounts for interest, attorneys' fees, and arbitration costs and expenses, resulting in a total claim of $937,116.81.

In its second cause of action against Alaric Consulting for "alter-ego liability," Naftaservice alleges precisely the same claims and seeks to hold Alaric Consulting liable for them on the ground that the two corporate defendants "are the alter egos of each other with respect to the charter of the M/V TROODOS." Compl. ¶ 28. The total claim against Alaric Consulting is also $ 937,116.81.

Naftaservice's claims fall within the admiralty and maritime jurisdiction of the Court. It makes a sufficient showing by affidavit of counsel that the defendants cannot be found within this district for the service of process. Consequently, Naftaservice is entitled to invoke Rule B. But the prayed-for amount of the attachment, $1,874,233.62, is arrived at by doubling the amount of Naftaservice's single claim of $937,116.81, asserted in the first cause of action against Alaric and in the second cause of action against Alaric Consulting.

In an *ex parte* telephone conference on January 14, 2008, the Court asked plaintiff's counsel to justify this double counting. Counsel relied upon Rule E(5)(a)(i). That reliance is entirely misplaced, as the plain language of Rules E(5) and B make clear.

Rule E(5) is captioned "Release of Property." Subparagraph E(5)(a) is captioned "Special Bond." Rule E(5)(a) provides that "[w]henever the process of maritime attachment and garnishment or process in rem is issued the execution of such process shall be stayed, or the property *released*, on the giving of security" by bond or stipulation (emphasis added). The Rule goes on to provide that "the principal sum [of such security] shall in no event exceed (i) twice the amount of the plaintiff's

claim or (ii) the value of the property on due appraisement, whichever is smaller." This is the language that plaintiff's counsel contends justifies an attachment under Rule B of a sum which is "twice the amount of the plaintiff's claim" as alleged in the complaint.

That contention fails because Rule B(1)(a), pursuant to which plaintiff's attachment is sought, provides that "a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible property—*up to the amount sued for*—in the hands of garnishees named in the process" (emphasis added). In the case at bar, "the amount sued for" by Naftaservice is $937,116.81. Plaintiff asserts in its two causes of action that both Alaric and Alaric Consulting are liable for that particular "amount sued for." That does not justify doubling "the amount sued for" as that phrase is used in Rule B(1)(a). Rule E(5) has no application at this initial stage of the proceedings. It comes into play only when property has been attached or garnished and an interested party seeks the "Release of Property," to quote again the caption of Rule E(5). The process of attachment that the Court will sign extends to the property of both defendants, in the amount sued for of $937,116.81. That attachment furnishes plaintiff with all the relief to which it is entitled under Rule B.

Plaintiff cites *Gulf Marine & Indus. Supplies, Inc. v. New Filipino Mar. Agencies, Inc.*, No. Civ. A 01-0555, 2001 WL 277924 (E.D. La. Mar. 20, 2001), as authority for the proposition that Rule B authorizes a maritime plaintiff to attach an amount which doubles the amount sued for. The plaintiff in *Gulf Marine* sued the defendant for the value of supplies and services it rendered to certain vessels. It does appear that upon filing of the complaint Judge Lemmon, a judge of the Eastern District of Louisiana, issued a Rule B process of attachment and garnishment in an amount which "was twice what plaintiffs alleged was owed." *Id.*, at *1. Apparently Judge Lemmon's order was not accompanied by a written explanation of how Rule B allowed an attachment of twice the

3

amount sued for. The defendant then moved before a different judge, Judge Livaudais, under Rule E(4)(f)[1] for a prompt hearing requiring the plaintiff to show cause why the attachment should not be vacated. Judge Livaudais noted that "[i]f the court upholds the attachment, the property owner may post a bond of sufficient amount to secure the claim," and then quoted Rule E(5)(a) in its entirety. *Id.*, at *5. He upheld the attachment in an amount that was twice that of the defendant's alleged debt. That is the maximum amount of security authorized by Rule E(5). It is not clear from his opinion whether Judge Livaudais approved the doubled amount as a Rule B attachment or a Rule E(5) security. However, assuming it was the former, neither Judge Lemmon nor Judge Livaudais analyzed how Rule B allows a plaintiff to commence its action by attaching property in an amount twice that the plaintiff alleges defendant owes, notwithstanding the provision in Rule B(a)(1) that property may be attached "up to the amount sued for." If my Eastern District of Louisiana colleagues believe that Rule B allows that doubling, their opinions do not bind me, and I respectfully decline to follow them.

For the foregoing reasons, the Court is issuing together with this opinion a process of maritime attachment and garnishment under Supplemental Rule B(1)(a) for Admiralty and Maritime Claims in the amount of $ 937,116.81.

Dated: New York, New York
       January 15, 2008

CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE
(PART I)

---

[1] Judge Livaudais's opinion references Rule E(4)(e). 2001 WL 277924, at *4. The correct citation is to Rule E(4)(f), which was added to the Supplemental Rules by amendment in 1985 to allay constitutional concerns about the *ex parte* attachment of property.